# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00246-COA

**NOMATTER GAVA-HUDSON**                                         **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/03/2020 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | CHRISTOPHER EDWARD SMITH GRADY MORGAN HOLDER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 01/26/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1. On March 23, 2018, Nomatter Gava-Hudson pled guilty to attempted murder. The Harrison County Circuit Court sentenced Gava-Hudson to serve twenty-five years in the custody of the Mississippi Department of Corrections.

¶2. On November 8, 2018, Gava-Hudson filed a motion for post-conviction relief (PCR) in which she argued that she was eligible for parole based on a conflict between Mississippi

Code Annotated sections 47-7-3 (Rev. 2015) and 97-3-2 (Rev. 2014).[1] The circuit court ordered the State to file a response to Gava-Hudson's PCR motion. On February 3, 2020, the circuit denied Gava-Hudson's PCR motion. Gava-Hudson subsequently filed a motion to alter or amend the order denying her PCR motion, which the circuit court also denied. Gava-Hudson appealed.

¶3. In accordance with the Mississippi Supreme Court's holding in *Fogleman v. State*, 283 So. 3d 685 (Miss. 2019), we find that the circuit court correctly determined that Gava-Hudson is ineligible for parole pursuant to Mississippi Code Annotated sections 47-7-3(1)(g)(i) and 97-3-2(1)(b). Therefore, we affirm.

**FACTS**

¶4. In 2015 during a physical argument with her husband, Gava-Hudson stabbed her three-year-old son in the sternum, abdomen, and back with a knife before stabbing herself. The child sustained severe injuries, including a lacerated liver and extreme blood loss, but he lived. When she was first questioned by the police, Gava-Hudson stated that her husband attacked her and their son. After hearing Gava-Hudson's statement, bystanders attacked her husband, and the police arrested him. Gava-Hudson later admitted to stabbing her son and attempting to kill her husband, and her husband was released. She was arrested and charged with the attempted murder of her son in violation of Mississippi Code Annotated section 97-

[1] Gava-Hudson also argued that the circuit court lacked jurisdiction to enter the correct sentencing order. She did not appeal that issue.

2

1-7(2) (Rev. 2014).

¶5.    On March 23, 2018, Gava-Hudson entered an open plea of guilty.  The circuit court sentenced Gava-Hudson to serve twenty-five years in the MDOC's custody.  Immediately after, the following exchange occurred:

Defense Counsel:    "Your Honor, I'm assuming none of that will be suspended, it's 25 years?"

The Court:    "Yes, sir."

Defense Counsel:    "And does that—that doesn't include any mandatory day-for-day time?"

The Court:    "No, sir. She's entitled to whatever parole, early-release, earned release that the [MDOC] has, and she'll be given credit for the time that she's already served."

. . . .

The State:    "And, Your Honor, as far as the 25 years to serve, you're saying you're leaving it up to MDOC to determine any type of early release or parole that they might decide is appropriate?"

The Court:    "Yes.  That's what I'm saying."

On March 27, 2018, the circuit court entered the sentencing order in accordance with its bench ruling.  Specifically, the court stated that "said sentence shall be non-mandatory and subject to the rules of the [MDOC] with regard to earned time, early release, or parole."

¶6.    On July 12, 2018, the circuit court held a hearing to clarify Gava-Hudson's sentence.  The court explained that the MDOC contacted the court after Gava-Hudson's sentencing and stated that Gava-Hudson was required to serve her sentence day-for-day.  As a result, the

3

court entered a corrected sentencing order that removed the "non-mandatory" language and instead read: Gava-Hudson "is hereby sentenced to a term of twenty-five [] years to serve incarcerated under the control and supervision of the [MDOC]."

¶7. On November 8, 2018, Gava-Hudson filed the instant PCR motion. She argued that because there was a conflict between sections 47-7-3(1)(g)(i) and 97-3-2(2), section 97-3-2 controlled her parole eligibility. More specifically, she argued that despite her classification as a violent offender under section 97-3-2(1)(b), she is eligible for parole under section 97-3-2(2) after completing one-half of her sentence.

¶8. The circuit court ordered the State to respond to Gava-Hudson's PCR motion. The State filed its response and primarily relied on *Fogleman v. State*, where the Mississippi Supreme Court held that section 47-7-3(1)(g) applies to the per se crimes of violence in section 97-3-2(1). *Fogleman*, 283 So. 3d at 691 (¶23). Ultimately, the circuit court denied Gava-Hudson's PCR motion and held that in accordance with *Fogleman* section 47-7-3 controlled, and thus Gava-Hudson was ineligible for parole.

**STANDARD OF REVIEW**

¶9. The trial court may summarily deny a PCR motion if it is apparent from the face of the motion, exhibits, and prior proceedings that the movant is not entitled to relief. *See* Miss. Code Ann. § 99-39-11(2) (Rev. 2015). "When reviewing a trial court's denial or dismissal of a [PCR motion], we will only disturb the trial court's factual findings if they are clearly erroneous; however, we review legal conclusions under a de novo standard of review."

4

*Chapman v. State*, 167 So. 3d 1170, 1172 (¶3) (Miss. 2015).

## ANALYSIS

¶10.    Gava-Hudson pled guilty to attempted murder in 2018. Section 47-7-3(1)(g)(i) states, "No person who, on or after July 1, 2014, is convicted of a crime of violence pursuant to Section 97-3-2, a sex crime or an offense that specifically prohibits parole release shall be eligible for parole." Section 97-3-2(1)(b) lists attempted murder as a crime of violence. As previously stated, *Fogleman* specifically held that "Section 4[7]-7-3(1)(g)(i) *does* apply to the per se crimes of violence in subsection (1) of Section 97-3-2 . . . ," meaning Gava-Hudson must serve her time without eligibility for parole.

¶11.    Gava-Hudson's sole argument on appeal is that this Court should overrule *Fogleman*, which would allow her to argue that her sentence is not controlled by 47-7-3(1)(g)(i) but by section 97-3-2(2). *Fogleman*, 283 So. 3d at 691-92 (¶23). However, the Supreme Court has expressly held otherwise. "[T]his Court cannot overrule Supreme Court precedent." *Evans v. State*, 282 So. 3d 659, 663 (¶14) (Miss. Ct. App. 2019) (quoting *Thompson v. State*, 230 So. 3d 1044, 1055 (¶36) (Miss. Ct. App. 2017)). Whether *Fogleman* should be overruled is a decision reserved solely for the Supreme Court. *Id*. Because the Supreme Court has clearly resolved the exact issue presented in this appeal, this Court affirms the circuit court's denial of Gava-Hudson's PCR motion.

¶12.    **AFFIRMED.**

     **BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS AND McDONALD, JJ., CONCUR. McCARTY, J., SPECIALLY**

**CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ. SMITH, J., NOT PARTICIPATING.**

**McCARTY, J., SPECIALLY CONCURRING:**

¶13.    I concur with the majority because, at this time, we are confined to precedent as it stands. I write separately because I believe there should be alternative options for those suffering from severe mental and emotional distress. Our courts should have the ability to fashion a remedy to do justice.

¶14.    In her handwritten petition to plead guilty to the attempted murder of her own child, Nomatter wrote, "On the night of Oct 5, 2015, I was having a breakdown and was having suicidal and homicidal thoughts when I stabbed my baby and myself." And in this case, no one disputes that she was having a breakdown—not the State, whose own doctor stated that "she was under extreme emotional and mental distress," not the trial court, and not counsel for Nomatter herself. During her plea colloquy, her lawyer told the court:

> And I know from talking to her that she understands that what she did was probably the most horrific thing that a mother could do, the worse night of her life obviously. And the state of mind she was in at the time, she was just having a breakdown. And it's a shame to me that the system, especially the mental health part of it, couldn't have done more to help or prevent it.

¶15.    Yet the only way to deal with a crime this serious in Mississippi, even when the person was in the throes of a mental and emotional breakdown like Nomatter, is punishment by incarceration. The legislature has taken a great first step by enacting the "Rivers McGraw Mental Health Diversion Pilot Program Act." Miss. Code Ann. §§ 9-27-1 to -21 (Rev. 2019).

¶16.    In the Act, the "Legislature recognizes the critical need for judicial intervention to

6

establish court processes and procedures that are more responsive to the needs of defendants with mental illnesses, while maintaining public safety and the integrity of the court process." Miss. Code Ann. § 9-27-3(1).

¶17.   Among the eight goals of the Act are:

   (a)   Reduce the number of future criminal justice contacts among offenders with mental illnesses;
   (b)   Reduce the inappropriate institutionalization of people with mental illnesses;
   (c)   Improve the mental health and well-being of defendants who come in contact with the criminal justice system;
   . . . .
   (f)   Protect public safety; [and]
   . . . .
   (h)   To use corrections resources more effectively by redirecting prison-bound offenders whose criminal conduct is driven in part by mental illnesses to intensive supervision and clinical treatment available in the mental health court.

Miss. Code Ann. § 9-27-3(2).

¶18.   Unfortunately, eligibility under the Act is narrowly defined and excludes many defendants who could satisfy the express goals of the Act with mental health intervention. *See* Miss. Code Ann. § 9-27-11 (defining the eligibility criteria for alternative sentencing under the Act).  For instance, a defendant charged with a crime of violence is excluded from safe haven under the Act.  Miss. Code Ann. § 9-27-11(1)(a).  This means that despite her clear and obvious need for mental health intervention, Nomatter is ineligible for diversion through the mental health courts and is instead fated to the only available option: imprisonment.

7

¶19. The need for diversion via mental health courts has also been championed by Mississippi Supreme Court Chief Justice Michael K. Randolph. The Chief Justice has traveled in communities across our State with the message that mental health courts could positively change lives while also saving money, just like drug courts. Bill Snyder, *Chief Justice Randolph Wants to Add Mental Health and Veteran Courts to State System*, WLOX (Jan. 10, 2020), https://www.wlox.com/2020/01/10/chief-justice-randolph-wants-add-mental-heath-veteran-courts-state-system (last visited Jan. 26, 2021). In prepared remarks the Chief has related that "since 2012, the state's drug court system has helped the state save more than $460 million and changed the lives of thousands of addicts by helping them rehabilitate[.]" *Id.*

¶20. What happened in this case was a tragedy—one rooted in mental distress. But there should be other solutions to tragedy than incarceration. Our legal system should be able to distinguish between the mens rea of a person with criminal intent and someone who, like Nomatter, was suffering from severe mental distress.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION**.